UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 07-20156 |
| Plaintiff, | Judge Avern Cohn |
| vs. | |
| NADA NADIM PROUTY, | |
| Defendant. | |

**MOTION TO COMPEL ENFORCEMENT OF MAY 13, 2008
JUDGMENT AND ORDERS ON BEHALF OF
<u>DEFENDANT NADA NADIM PROUTY</u>**

Thomas W. Cranmer, Esq. (P25252)
MILLER CANFIELD PADDOCK
   AND STONE, P.L.C.
840 West Long Lake Road, Suite 200
Troy, Michigan 48098
Tel: 248-879-2000
Fax: 248-879-2001
Cranmer@millercanfield.com

Howard M. Shapiro, Esq.
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave, NW
Washington, D.C. 20006
Tel: 202-663-6000
Fax: 202-663-6363
Howard.Shapiro@wilmerhale.com

*Counsel for Defendant Nada Nadim Prouty*

Defendant Nada Nadim Prouty, by and through her attorneys, Miller Canfield Paddock and Stone, P.L.C. and Wilmer Cutler Pickering Hale and Dorr LLP, moves to enforce the court's judgment and orders of May 13, 2008 and compel the government to confirm that it is not seeking to deport Ms. Prouty. The basis for the Motion is set forth below in the Brief in Support.

Dated: July 24, 2009

                Respectfully submitted,

                By: s/Thomas W. Cranmer

                    Thomas W. Cranmer, Esq. (P25252)
                    MILLER CANFIELD PADDOCK
                        AND STONE, P.L.C.
                    840 West Long Lake Road, Suite 200
                    Troy, Michigan 48098
                    Tel: 248-879-2000
                    Fax: 248-879-2001
                    Cranmer@millercanfield.com

                    Howard M. Shapiro, Esq.
                    WILMER CUTLER PICKERING
                        HALE AND DORR LLP
                    1875 Pennsylvania Ave, NW
                    Washington, D.C. 20006
                    Tel: 202-663-6000
                    Fax: 202-663-6363
                    Howard.Shapiro@wilmerhale.com

                *Counsel for Defendant Nada Nadim Prouty*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 07-20156 |
| Plaintiff, | Judge Avern Cohn |
| vs. | |
| NADA NADIM PROUTY, | |
| Defendant. | |

BRIEF IN SUPPORT OF DEFENDANT NADA NADIM PROUTY'S
MOTION TO COMPEL ENFORCEMENT OF
<u>MAY 13, 2008 JUDGMENT AND ORDERS</u>

Thomas W. Cranmer, Esq. (P25252)
MILLER CANFIELD PADDOCK
  AND STONE, P.L.C.
840 West Long Lake Road, Suite 200
Troy, Michigan 48098
Tel: 248-879-2000
Fax: 248-879-2001
Cranmer@millercanfield.com

Howard M. Shapiro, Esq.
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave, NW
Washington, D.C. 20006
Tel: 202-663-6000
Fax: 202-663-6363
Howard.Shapiro@wilmerhale.com

*Counsel for Defendant Nada Nadim Prouty*

## INTRODUCTION

Despite the passage of a year's time since the resolution of her criminal case, Ms. Prouty continues to suffer from the consequences of the government's initial mischaracterization of her loyalty to the United States. Since she was sentenced in May 2008, the Bureau of Immigration and Customs Enforcement ("ICE") has threatened to deport her. (See Prouty Decl., Ex. 1.) ICE has also imposed a 50-mile travel restriction, from which she must receive ICE authorization to exceed. (See Order of Supervision, June 23, 2008; Ex. 1-E to Prouty Declaration.) Inflammatory and inaccurate press releases remain on the government's website. Banks and other financial institutions have canceled her existing accounts and refused to allow the opening of new accounts on the basis of a mischaracterization of her offenses. (See Prouty Decl., Ex. 1.)

Ms. Prouty had hoped that the court's findings at sentencing and the passage of time would help to reestablish the fact that she never compromised national security. The succeeding months, however, have been marked not only by the events described above, but by the government's October 2008 award for the prosecution of this case, titled the Three-Year Investigation of Hizballah. (See Department of Justice, Recipients of the Attorney General's 56th Annual Awards, http://www.usdoj.gov/jmd/ps/selectionsannualawards2008.pdf.) More recently, on March 10, 2009, the government requested the surrender of her canceled naturalization certificate, leading her to fear there may be renewed interest in her immigration status. (See Prouty Decl., Ex. 1.) Finally, most recently, Ms. Prouty's sister, Ms. El Aouar, who was involved in related proceedings in this case, was arrested by ICE at her home. ICE agents disputed the agreement that was reached between Ms. El Aouar's then-counsel, Mr. James Thomas, and held her in custody from April 21, 2009 through April 24, 2009. Ms. Prouty accordingly seeks at this time a measure of closure and affirmative relief. This court has the

authority, pursuant to its judgment and orders of May 13, 2008, to compel the government to confirm that it is not seeking to deport her.

## FACTUAL BACKGROUND

### A. Guilty Plea and Court's Orders of May 13, 2008

On November 13, 2007, Nada Nadim Prouty pleaded guilty before this court to naturalization fraud and conspiracy to commit the same, 18 U.S.C. §§ 1425 and 371 (2000), and a misdemeanor charge of unauthorized computer access, 18 U.S.C. § 1030. (See Rule 11 Plea Agreement, Nov. 13, 2007.) Pursuant to conviction under Title 18, United States Code, Section 1425, her U.S. citizenship was automatically revoked. (See Order Revoking United States Citizenship, May 13, 2008 (citing 8 U.S.C. § 1451(e)).[1] As part of the plea, Ms. Prouty agreed to waive her rights to receive notice of intent to request judicial removal, to any hearing on the question of her removability, including the rights she would normally have in a contested proceeding, and to apply for relief from removal, including appeal. (See Rule 11 Plea Agreement at ¶ 8, Nov. 13, 2007.) Instead, she became subject to this court's authority to order her removal and was simultaneously granted withholding of removal pursuant to 8 U.S.C. §§ 1231(b)(3), 1228(c)(5).[2] Upon the conclusion of any sentence imposed by the court, Ms. Prouty further agreed to supervision by ICE. (See Rule 11 Plea Agreement at ¶ 8, Nov. 13, 2007.)

---

[1] 8 U.S.C. § 1451(e) ("When a person shall be convicted under section 1425 of Title 18 of knowingly procuring naturalization in violation of law, the court in which such conviction is had shall thereupon revoke, set aside, and declare void the final order admitting such person to citizenship, and shall declare the certificate of naturalization of such person to be canceled. Jurisdiction is conferred on the courts having jurisdiction of the trial of such offense to make such adjudication.").

[2] 8 U.S.C. § 1228(c)(5) ("The United States Attorney, with the concurrence of the Commissioner, may, pursuant to Federal Rule of Criminal Procedure 11, enter into a plea agreement which calls for the alien, who is deportable under this chapter, to waive the right to notice and a hearing under this section, and stipulate to the entry of a judicial order of removal from the United States as a condition of the plea agreement or as a condition of probation or supervised release, or both. The United States district court, in both felony and misdemeanor cases, and a United

3

It is our understanding, and we believe the court's understanding, that pursuant to the terms and conditions of the agreement between the parties, the government would not seek to deport Ms. Prouty, not only to Lebanon, but to any other country. Thus, on May 13, 2008, the court sentenced Ms. Prouty to a $750 fine (see Judgment in a Criminal Case, May 13, 2008), revoked her citizenship (see Order Revoking United States Citizenship, May 13, 2008), ordered her removal from the United States to her native country Lebanon, and then withheld that removal. (See Judicial Order of Removal to Lebanon and Concurrent Grant of Withholding of Removal to Lebanon, May 13, 2008.) ("It is further ordered that Nada Nadim Prouty . . . is granted withholding of removal to the country of Lebanon pursuant to Title 8, United States Code, section 1228(c), and that the order of removal to Lebanon is withheld."). The parties all understood that Ms. Prouty was to be permitted to remain in the United States because of concerns for her safety abroad. (See Rule 11 Plea Agreement at ¶ 8, Nov. 13, 2007) (citing to 8 U.S.C. § 1231(b)).

### B. ICE Supervision

On June 23, 2008, ICE issued an Order of Supervision, signed by Deborah Achim, Field Office Director, requiring Ms. Prouty to report monthly in person, among other conditions. (See Order of Supervision, June 23, 2008; Ex. 1-E to Prouty Declaration.) Ms. Prouty appeared for her first visit on June 19, 2008. (See Prouty Decl., Ex. 1.) During that visit, she was placed in a holding cell. ICE Supervisory Special Agent Barr, accompanied by Deportation Officer Oscar Gonzalez, told Ms. Prouty that ICE was "actively seeking" to deport her to an unidentified country other than Lebanon. Id. She was instructed that she should arrive at every reporting session with her belongings packed and ready for deportation. Id. Ms. Prouty voiced her

---

States magistrate judge in misdemeanor cases, may accept such a stipulation and **shall have jurisdiction** to enter a judicial order of removal pursuant to the terms of such stipulation.") (emphasis added).

4

BHLIB:665863.1\134207-00001

concern that deportation to certain countries, based on her prior government service work in national security could jeopardize her safety, and that this information was in her file. Id. The agent stated that he had not read her file and did not know who was responsible for doing so. Id. He suggested that if Ms. Prouty had a concern about the country to which she might be deported, she should contact the United Nations to seek removal in advance of the government doing so. Id. Moreover, ICE instructed her that because her deportation order was "final," it meant that ICE was committed to deporting her, and her circumstances might get worse. Id. ICE asserted that her case was "being handled out of ICE headquarters," and that the Washington Field Office was following those instructions. Id. To date, the instructions to Ms. Prouty to be packed and ready for deportation remain in effect. As recently as March 6, 2009, another ICE supervisory special agent informed Ms. Prouty that he had received "a message that I need to collect your U.S. Naturalization certificate." Id. This was followed by an identical request on March 10, 2009 by the prosecution. On April 2, 2009, the prosecution informed Ms. Prouty that it is a felony to fail to surrender a cancelled naturalization certificate and any and all copies thereof. Id. Additionally, such a felony would also violate the terms of ICE's Order of Supervision and thus permit ICE to take Ms. Prouty into immediate custody. Id. Ms. Prouty is fully aware that her certificate is canceled and void; the request at this time, however, renews her concern that her immigration status is uncertain and the government may be seeking to deport her.

    In addition to the threat of deportation, ICE imposed other restrictions on Ms. Prouty in its Order of Supervision. Ms. Prouty must give notice to ICE and receive permission to travel outside of a 50-mile radius of her home, (see Order of Supervision, June 23, 2008; Ex. 1-E to Prouty Declaration), or face the threat of arrest. (See Prouty Decl., Ex. 1.)

5

C. <u>**Government Mischaracterization**</u>

Surrounding the entry of Ms. Prouty's plea, the government issued a number of comments in press releases stating that she was disloyal to American interests, among them:

- "[Ms. Prouty] engaged in a pattern of deceit . . . to obtain and **exploit her access to sensitive counterterrorism intelligence**." (Press Release, Department of Justice, Former Employee of CIA and FBI Pleads Guilty to Conspiracy, Unauthorized Computer Access, and Naturalization Fraud (Nov. 13, 2007), http://www.usdoj.gov/opa/pr/2007/November/07_nsd_910.html *and* http://detroit.fbi.gov/dojpressrel/pressrel07/de111307.htm) (quoting Assistant Attorney General Kenneth Wainstein) (emphasis added).

- "Nada Prouty's guilty plea should serve as a solemn warning to those who say they've pledged their allegiance to the United States and then make **the conscious decision to place America's interests at risk**." <u>Id.</u> (quoting Brian Moskowitz, Special Agent in Charge of the ICE Office of Investigations in Detroit) (emphasis added).

Subsequent to Ms. Prouty's plea, her bank, USAA Federal Savings Bank ("USAA") responded to the allegations of disloyalty by freezing her funds and began the process of closing her accounts. (<u>See</u> Prouty Decl., Ex. 1.; Letter from Gordon Prouty and Nada Prouty, to USAA Federal Savings Bank, Ex. 1-A to Prouty Declaration;. and Letter from USAA Federal Savings Bank to Gordon and Nada Prouty, Ex. 1-B to Prouty Declaration.) USAA did so because it determined that Ms. Prouty posed an "unwarranted risk." (<u>See</u> Letter from Linda McCaig, Consumer Affairs Specialist, Office of Thrift Supervision, to Gordon Prouty (June 10, 2008), Ex. 1-C to Prouty Declaration.) Because banks are obligated to avoid terrorist financing, they have broad discretion to make determinations of risk, <u>see</u> Bank Secrecy Act, 31 U.S.C. §§ 5311-5330 (2000 & Supp. 2008), and have the ability to close client accounts deemed to be too risky where the client's identity cannot be verified. (<u>See</u> 31 C.F.R. §§ 103.121(b) (2009) (requirements to identify account holders); 103.135 (obligations for credit card systems to guard against financing of terrorist activities).

6

However, upon review of the record, the court determined at sentencing that Ms. Prouty was never, in fact, disloyal: "At no time did [Ms. Prouty] ever compromise or jeopardize the integrity of any work assignment to improper behavior or inappropriate conduct." (See Sentencing Hr'g Tr. 12, May 13, 2008.) The prosecution conceded as much during the sentencing hearing: "Now, I'm not saying Ms. Prouty did that . . . ." Id. at 10. Nevertheless, months later, in October 2008, the Department of Justice awarded the prosecution in this case for "elimination of vulnerabilities to the Nation's security within the intelligence community and . . . uncovering numerous compromises in classified national security investigations into the activities of the designated foreign terrorist organization, Hizballah . . . ." (See Department of Justice, Award Program for The Attorney General's 56th Annual Awards Ceremony (Oct. 22, 2008) http://legaltimes.typepad.com/blt/files/ag_awardprogram_2008.pdf.)

## ARGUMENT

### A. Government Threat of Deportation Is Misplaced and Contrary to Representations Made to this Court.

Commensurate with what we believe was the understanding between the parties and this court that the government would not seek to deport Ms. Prouty, either to Lebanon or any other country, Ms. Prouty pleaded guilty (see Rule 11 Plea Agreement, Nov. 13, 2007), waived rights to an administrative proceeding with respect to removability, and availed herself of the court's jurisdiction instead to sign related orders that had the effect of allowing her to remain in the United States. (See Order Revoking United States Citizenship, May 13, 2008; Judicial Order of Removal to Lebanon and Concurrent Grant of Withholding of Removal to Lebanon, May 13, 2008.) This process took place pursuant to the court's jurisdiction. (See 8 U.S.C. 1228(c)(5)) ("The United States district court, in both felony and misdemeanor cases . . . shall have jurisdiction to enter a judicial order of removal pursuant to the terms of such stipulation.");

United States v. Angel-Martinez, 988 F. Supp. 475, 481 (D.N.J. 1997) (explaining that the exception to the jurisdiction of immigration judges is 8 U.S.C. § 1228(c)(5), when a district court has jurisdiction to decide removal where the defendant stipulates to deportation, there is a request from the United States Attorney, and consent from the Commissioner). The government cannot now, in good faith, be seeking her deportation, as claimed by an ICE supervisory agent and never withdrawn. Such a threat raises an issue that is properly within the court's jurisdiction. It is the province of the district court in this case to hear what, if any, removal proceedings are contemplated, (see 8 U.S.C. § 1228(c)(5)), particularly in light of Ms. Prouty's unique government service.

This court has the authority to ensure that Ms. Prouty not be deported from the United States.

### B. Further Actions of ICE Are Unnecessary.

ICE demands that Ms. Prouty report in person every month. (See Order of Supervision, June 23, 2008; Ex. 1-E to Prouty Declaration.) It also demands that she does not travel outside a 50-mile radius of her home without advance, written permission from ICE. Id. She must request ICE's authorization to travel and provide "information about the dates, purposes, places and manner of such proposed travel." Id. The restrictions forbid her even from driving to Baltimore, because it is just outside the 50-mile perimeter. In light of the threats of deportation described above, these additional restraints only serve to exacerbate Ms. Prouty's apprehension about her immigration status and are not necessary to achieve any legitimate government purpose.

### CONCLUSION

Upon the resolution of her criminal case, Ms. Prouty hoped that, over time, the court's finding that she did not threaten national security would prevail. However, ICE's actions, by

8

threatening her with deportation and most recently threatening criminal consequences and immediate detainment regarding its request for her canceled naturalization certificate, give Ms. Prouty reason to fear the government's intentions with respect to her immigration status. The original mischaracterization of her offenses, instead of waning with the passage of time, continues with events such as the government's October 2008 "Investigation of Hizballah" award. She remains unable to access financial institutions for banking services and she resides in a state of uncertainty, mindful of the admonition that she be prepared, upon each ICE reporting visit, for deportation. For the above reasons, Ms. Prouty respectfully requests that the court issue an order confirming that Ms. Prouty is not to be deported and requiring the government to refrain from engaging in any further conduct that perpetuates the original mischaracterization of her loyalty and has no legitimate government purpose.

Dated: July 24, 2009

Respectfully submitted,

By: s/Thomas W. Cranmer

Thomas W. Cranmer, Esq. (P25252)
MILLER CANFIELD PADDOCK
 AND STONE, P.L.C.
840 West Long Lake Road, Suite 200
Troy, Michigan 48098
Tel: 248-879-2000
Fax: 248-879-2001
Cranmer@millercanfield.com

Howard M. Shapiro, Esq.
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave, NW
Washington, D.C. 20006
Tel: 202-663-6000
Fax: 202-663-6363
Howard.Shapiro@wilmerhale.com

*Counsel for Defendant Nada Nadim Prouty*

9

BHLIB:665863.1\134207-00001

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2009, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to the following:

- **Christopher A. Andreoff**
  candreoff@jafferaitt.com,mgeiersbach@jaffelaw.com

- **Kenneth R. Chadwell**
  ken.chadwell@usdoj.gov,usamie.ecfctu@usdoj.gov

- **Mark J. Jebson**
  mark.jebson@dhs.gov

- **Eric M. Straus**
  eric.straus@usdoj.gov,stacey.harris@usdoj.gov

- **James C. Thomas**
  jthomas@plunkettcooney.com,btessier3@hotmail.com

And hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:

NONE.

|  |  |
|---|---|
| | By: s/Thomas W. Cranmer |
| | Thomas W. Cranmer (P25252) |
| | Miller, Canfield, Paddock and Stone, P.L.C. |
| | 840 West Long Lake Road, Suite 200 |
| | Troy, Michigan 48098-6358 |
| | Telephone: (248) 267-3381 |
| Dated: July 24, 2009 | Cranmer@millercanfield.com |

10

BHLIB:665863.1\134207-00001